**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**MALONE/PLATTSBURGH DIVISION**

| | |
|---|---|
| BEVERLY BROWN; MARY GLADYS ORLYK; SHAWN THOMPSON; and SHIRLEY STACER<br><br>Plaintiffs,<br><br>vs.<br><br>COMMUNITY PRESERVATION PARTNERS, LLC; CPP EAST, LLC; ROCHESTER'S CORNERSTONE GROUP, LTD; CORNERSTONE DEVELOPMENT PROPERTIES LLC; WINNRESIDENTIAL (NY) LLC; WINN MANAGED PROPERTIES, LLC dba WINN MANAGEMENT COMPANY; LAWRENCE AVENUE COMMUNITY PARTNERS, LP; LAWRENCE AVENUE COMMUNITY PARTNERS GP, LLC; WNC DEVELOPMENT PARTNERS, LLC; and WNC – LAWRENCE AVENUE COMMUNITY PARTNERS, LLC<br><br>Defendants. | Civil Action No.: _____ 8:23-cv-477 (GTS/DJS)<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1.      Plaintiffs Beverly Brown; Mary Gladys Orlyk; Shawn Thompson; and Shirley Stacer ("Plaintiffs") bring this suit against Defendants for unlawful discrimination on the basis of disability in violation of the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C.§ 3601, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. § 794, and the New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290, *et seq*.

2.      Plaintiffs, all senior individuals with disabilities that limit their mobility and who reside at Lawrence Avenue Apartments in Potsdam, New York, seek declaratory, injunctive, and monetary relief against Defendants for decommissioning and refusing to replace an elevator that

1

Plaintiffs relied upon to fully use and enjoy their apartments. Absent such relief, Plaintiffs'

ability to safely and independently access their apartments or other areas of the building will

continue to be impaired.

## JURISDICTION AND VENUE

3.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343; and

42 U.S.C. § 3613. This Court has supplemental jurisdiction over Plaintiffs' state law claims

under 28 U.S.C. § 1367.

4.       This Court has authority to grant the requested relief against Defendants under 28 U.S.C.

§§ 2201 and 2202; 42 U.S.C. § 3613; and Rules 57 and 65 of the Federal Rules of Civil

Procedure.

5.       Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claims occurred within this District

and Division.

## PARTIES AND PROPERTY

6.       Lawrence Avenue Apartments ("the Property") is a residential development located at 3

Debra Drive, Potsdam, New York 13676. The Property is comprised of six buildings containing

a total of 137 units. Building A at the Property contains 61 units distributed across two floors.

7.       The Property receives federal financial assistance in the form of Project-Based Section 8

Rental Assistance from the United States Department of Housing and Urban Development

("HUD"). The Property also receives federal Low-Income Housing Tax Credits ("LIHTCs")

through the New York State Housing Finance Agency ("NYSHFA").

8.       Plaintiff Beverly Brown resides on the second floor of Building A at the Property. Ms.

Brown is 67 years old and has multiple medical conditions that impair her mobility, including

degenerative disc disease, degenerative joint disease, and chronic obstructive pulmonary disease ("COPD"). As a result of these conditions, Ms. Brown cannot walk without the use of a walker, cannot walk up or down stairs without extreme difficulty, and regularly and increasingly requires the use of a wheelchair for mobility.

9.      Plaintiff Mary Gladys Orlyk also lives on the second floor of Building A at the Property. Ms. Orlyk is 83 years old and has several medical conditions that limit her mobility, including COPD, arthritis, atrial fibrillation, and essential thrombocythemia. Due to these medical conditions, Ms. Orlyk experiences shortness of breath when she walks even short distances and has extreme difficulty navigating stairs without assistance.

10.     Plaintiff Shirley Stacer resides on the first floor of Building A at the Property. She is 73 years old and has several medical conditions that limit her mobility, including fibromyalgia, rheumatoid arthritis, and Heglund's deformity. Ms. Stacer relies on a rollator for mobility and cannot navigate stairs unaided when visiting her boyfriend and friends who live on the second floor of Building A.

11.     Plaintiff Shawn Thompson resides on the second floor of Building A at the Property. Ms. Thompson is 61 years old and has several medical conditions that impair her mobility, including fibromyalgia, rheumatoid arthritis, and chronic fatigue syndrome. Due to these medical conditions, navigating stairs without assistance is extremely difficult for Ms. Thompson and causes her pain and shortness of breath.

12.     Defendant Lawrence Avenue Community Partners, LP ("Lawrence Ave Partners") is the owner of the Property. Lawrence Ave Partners is a New York limited partnership, organized under the laws of New York, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614.

13.     Defendant Community Preservation Partners, LLC ("CPP") is a California limited liability company, organized under the laws of California, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614. CPP is an owner of Lawrence Avenue Apartments and a general partner of Defendant Lawrence Ave Partners.

14.     Defendant CPP East, LLC ("CPP East") is a California limited liability company, organized under the laws of California, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614. CPP East is a subsidiary of Defendant CPP and, upon information and belief, is an owner of Lawrence Avenue Apartments.

15.     Defendant Rochester's Cornerstone Group, Ltd. ("Cornerstone Group") is a New York corporation, organized under the laws of New York, with its principal place of business at 460 White Spruce Boulevard, Rochester, New York 14623. Cornerstone Group is an owner of Lawrence Avenue Apartments and a general partner of Defendant Lawrence Ave Partners.

16.     Defendant Cornerstone Development Properties LLC ("Cornerstone Development") is a New York limited liability company, organized under the laws of New York, with its principal place of business at 460 White Spruce Boulevard, Rochester, New York 14623. Upon information and belief, Cornerstone Development oversaw the recent redevelopment of Lawrence Avenue Apartments and continues to participate in the management of the Property.

17.     Defendant Lawrence Avenue Community Partners GP, LLC ("Lawrence Ave GP") is a California limited liability company, organized under the laws of California, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614. Lawrence Ave GP is a general partner of Defendant Lawrence Ave Partners.

18.     Defendant WinnResidential (NY) LLC ("Winn Residential") is a New York limited liability company, organized under the laws of New York. Upon information and belief, Winn

Residential is the day-to-day manager of Lawrence Avenue Apartments. Winn Residential is, upon information and belief, a subsidiary of Defendant Winn Managed Properties, LLC.

19.     Defendant Winn Managed Properties LLC, doing business as Winn Management Company ("Winn Management"), is a limited liability company organized under the laws of Delaware, with its principal place of business at 6 Faneuil Hall Marketplace, Boston, Massachusetts 02109. Upon information and belief, Winn Management is the parent company of Defendant Winn Residential and directs Winn Residential's management of Lawrence Avenue Apartments.

20.     Defendant WNC – Lawrence Avenue Community Partners, LLC ("WNC Lawrence Ave") is a California limited liability company organized under the laws of California, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614. Upon information and belief, WNC Lawrence Ave is an owner of the property and is the managing member of Defendant Lawrence Ave GP.

21.     Defendant WNC Development Partners, LLC ("WNC Development") is a California limited liability company organized under the laws of California, with its principal place of business at 17782 Sky Park Circle, Irvine, California 92614. Upon information and belief, WNC Development is an owner of the property and is the sole member of Defendant WNC Lawrence Ave.

22.     In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

23.     In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant

to such agencies, or the alleged acts or omissions of each employee or officer as agent were

subsequently ratified and adopted by one or more Defendants as principal.

## FACTUAL BACKGROUND

### A.  Defendants' Acquisition and Renovation of Lawrence Avenue Apartments

24.     Upon information and belief, Defendants CPP, CPP East, Cornerstone Group, Lawrence

Ave GP, Cornerstone Development, WNC Lawrence Ave, and WNC Development (hereinafter,

"Developer Defendants") commenced a joint business venture in 2018 to acquire and rehabilitate

Lawrence Avenue Apartments ("the Project").

25.     In or around March 2019, the Developer Defendants formed Defendant Lawrence Ave

Partners for the purpose of carrying out the Project.

26.     Upon information and belief, Defendants CCP and/or CPP East were principally in

charge of obtaining financing for the Project.

27.     In early 2019, the Developer Defendants and Defendant Lawrence Ave Partners applied

for and received a mix of public and private financing for the project, including approximately

$15 million dollars in tax-exempt bond financing from the St. Lawrence County Industrial

Development Agency, a $15 million loan from KeyBank Real Estate Capital, and federal

LIHTCs that generated an additional $6.6 million to $7 million for the project.

28.     On or about August 22, 2019, Defendant Lawrence Ave Partners acquired the Property

for $7.3 million.

29.     Defendant Lawrence Ave Partners also executed an Assignment and Assumption

Agreement on or about August 22, 2019. Pursuant to this agreement, Lawrence Ave Partners

assumed all rights and obligations of the prior Property owner pursuant to a Section 8 Housing

Assistance Payment Contract ("HAP Contract") with the United States Department of Housing

and Urban Development ("HUD"). Under the HAP Contract, the Property continues to receive Project-Based Section 8 rental assistance from HUD, which subsidizes rents for the Property's low-income residents.

30.     Shortly after Defendant Lawrence Ave Partners took title to the Property, Defendant Winn Residential became the property manager.

31.     Upon information and belief, Defendant Winn Management established policies and procedures to be followed by Defendant Winn Residential in its day-to-day management of the Property and otherwise directs or controls Winn Residential's management of the Property, including but not limited to setting policies or procedures for responding to tenant requests for reasonable modifications and accommodations.

32.     Between September 2019 and July 2020, Defendants completed substantial interior and exterior renovations at the Property. The interior renovations included the installation of kitchen, bathroom, flooring, and lighting upgrades within individual units, as well as upgrades to community rooms and shared laundry facilities. The exterior renovations included the installation of new roofing, siding, and windows, the resurfacing of sidewalks and the parking lot, playground upgrades, creation of a dog park, and new landscaping. Defendants also upgraded the Property's heating systems and installed rooftop solar panels.

33.     Upon information and belief, the total renovation costs for the Project were approximately $10 million.

34.     Prior to Defendants' acquisition, renovation, and management of the Property, Building A had been reserved for senior residents aged 62 and older. After Defendants acquired and renovated the Property, Building A was no longer reserved for seniors.

35.     Prior to Defendants' renovation of the Property, a small elevator was available for resident use in the common area of Building A. Upon information and belief, Building A was the only building at the Property with an elevator. Plaintiffs and other senior residents of Building A with mobility impairments regularly used the elevator to access their units, visit with friends, and carry groceries, laundry, and other items between floors.

36.     In their LIHTC application, the Developer Defendants and Defendant Lawrence Ave Partners listed "Elevator full upgrades" among the renovations to be completed as part of the Project. The LIHTC application also repeatedly described Building A as a "two-story elevator building," without any statement or indication that Defendants planned to remove or otherwise decommission the elevator during the Project.

37.     Defendants allocated approximately $75,000 in their construction budget for upgrades to the elevator in Building A.

38.     Upon information and belief, in or around May 2019, Defendants obtained an estimate for replacing the elevator from Nationwide Lifts, an elevator installation company. Installation of the wheelchair-accessible replacement elevator proposed by Nationwide Lifts would have cost approximately $50,000 to $55,000 and would not have required alterations to adjacent units or structural walls.

39.     Nevertheless, Defendants ultimately chose not to install a new elevator and did not repair or otherwise make upgrades to the existing elevator in Building A.

   **B. Defendants' Disability Discrimination Against Plaintiffs**

40.     Despite budgeting for elevator upgrades and identifying an economically and structurally feasible replacement that would have met the needs of their disabled and elderly residents, Defendants decommissioned the Building A elevator in or around July 2020. Upon information

and belief, Defendants installed new drywall to cover the elevator doorways, but otherwise left the existing elevator in place in Building A.

41.     Before Defendants decommissioned the elevator, Ms. Brown, Ms. Stacer, Ms. Orlyk and several other Building A residents expressed concerns to Defendants' property management and maintenance staff that doing so would interfere with their ability to use and enjoy their apartments because of their disabilities.

42.     After decommissioning the elevator, Defendants installed a stairlift in Building A.

43.     The stairlift installed by Defendants fails to meet Plaintiffs' disability-related needs.

44.     Ms. Brown is unable to safely carry her mobility aid, groceries, laundry, or other items while riding the stairlift. Moreover, when Ms. Brown's disabilities require her to use a wheelchair – which occurs regularly – she cannot independently use the stairlift at all.

45.     Ms. Stacer is also unable to safely carry her mobility aid or other large items up or down the stairs while riding the stairlift. On the occasions when she has attempted to ride the stairlift with her mobility aid, she has suffered bruising on her legs and feet and, in at least one instance, nearly fell down the stairs.

46.     Ms. Orlyk is similarly unable to safely carry groceries, laundry, or other large items to or from her apartment while riding the stairlift. On occasions when Ms. Orlyk requires supplemental oxygen when leaving her unit, she cannot use the stairlift without assistance.

47.     Ms. Thompson also cannot safely carry groceries, laundry, or other large items to or from her apartment while riding the stairlift.

48.     Defendants do not assist Plaintiffs with navigating the stairs, nor with carrying mobility aids, groceries, or other items up or down the stairs on a regular or reliable basis.

49.     The difficulties Plaintiffs face when using the stairlift has limited their ability to come and go as they please, hindered their ability to socialize with friends and neighbors, and impaired their sense of independence.

50.     On December 2, 2020, Plaintiffs' counsel sent a letter via email to Joshua Kennedy, the on-site manager of the Property at that time, with copies also sent via email to Winn Residential's corporate office the President of CPP, Anand Kannan. The letter explained that the stairlift installed by Defendants did not meet Plaintiffs' disability-related needs and requested that Defendants repair or replace the decommissioned elevator in order to afford Plaintiffs' full use and enjoyment of their apartments and the Property.

51.     In a letter dated December 22, 2020, counsel for Defendants denied Plaintiffs' request for the repair or replacement of the elevator. In the letter, Defendants' counsel also asserted that installation of the stairlift satisfied Defendants' obligations under applicable laws. Defendants did not offer any additional assistance to Plaintiffs with using the stairlift or navigating the stairs and did not propose any alternative modifications.

52.     On or about November 3, 2021, Plaintiffs filed administrative housing discrimination complaints with HUD. To date, HUD has yet to conclude its investigation and issue reasonable cause determinations regarding Plaintiffs' complaints pursuant to 42 U.S.C. § 3608(g).

53.     The stairlift installed by Defendants frequently malfunctions and/or is inoperable. In such circumstances, Plaintiffs must either find someone to assist them up or down the stairs or attempt to walk up or down the stairs independently, at significant risk to their health and safety due to their disabilities.

54.     Defendants' decommissioning of the Building A elevator and their refusal to install an adequate replacement has deprived Plaintiffs of autonomy and significantly impaired their use and enjoyment of their homes, causing them both economic and emotional harm.

**C. Defendants' Obligations to Comply with Section 504 of the Rehabilitation Act**

55.     Section 504 of the Rehabilitation Act of 1973 and its implementing regulations at 24 C.F.R. Part 8 "obligate housing providers [that receive federal financial assistance] to make and pay for structural changes to facilities, if needed as a reasonable accommodation for applicants and tenants with disabilities, unless doing so poses an undue financial and administrative burden."[1]

56.     Defendants are required to comply with Section 504 because of their participation in the federal LIHTC program or because of their receipt of federal financial assistance, or both.

57.     All Defendants are LIHTC program participants by virtue of their ownership or management of the Property.

58.     The LIHTC program provides indirect federal subsidies for the acquisition, construction, and rehabilitation of rental housing that serves low-income households by giving project investors a dollar-for-dollar reduction in federal income tax liability. In New York, the State Housing Finance Agency ("NYSHFA") administers the allocation of "As of Right" LIHTCs,

---

[1] Joint Statement of the Department of Housing and Urban Development and the Department of Justice, *Reasonable Modifications Under the Fair Housing Act*, at 6, n.9 (March 5, 2008), available at https://www.hud.gov/sites/documents/reasonable_modifications_mar08.pdf; *see also id.* at 16; *Reasonable Accommodations and Modifications*, HUD.gov, available at https://www.hud.gov/program_offices/fair_housing_equal_opp/reasonable_accommodations_an d_modifications ("Under Section 504, reasonable accommodations must be provided and paid for by the housing provider unless providing them would be an undue financial and administrative burden or a fundamental alteration of the program.").

which are awarded on a non-competitive basis to projects financed by private activity bonds issued by other state agencies, such as industrial development agencies.

59.     As recipients of "As of Right" LIHTCs, Defendants must abide by their Regulatory Agreement with the NYSHFA, which describes the terms and conditions of Defendants' participation in the LIHTC program related to Lawrence Avenue Apartments. The Regulatory Agreement requires Defendants to reserve all 137 units at the Property for rental by low-income individuals or families, specifies the method by which rents are to be set at affordable levels, and sets forth additional obligations Defendants must meet to receive tax credits.

60.     One of the obligations placed on Defendants under the Regulatory Agreement is compliance with Section 504 of the Rehabilitation Act of 1973. The Regulatory Agreement requires Defendants to annually certify their compliance with all applicable federal and state fair housing and/or anti-discrimination statutes and rules, which the NYSHFA's Fair Housing and Tenant Selection Guidelines specifically define to include Section 504 and its implementing regulations. Defendants are therefore required to abide by the requirements of Section 504 in their provision of affordable housing at Lawrence Avenue Apartments, including the obligation to bear the cost of disability-related reasonable modifications and/or accommodations at the Property.

61.     Defendants are also separately and independently subject to the requirements of Section 504 because they receive federal funding in the form of Project-Based Section 8 Rental Assistance through their ownership or management of Lawrence Avenue Apartments.

### D.  Defendants' Violation of Fair Housing and Disability Discrimination Laws

62.     Defendants' decommissioning of the Building A elevator in deliberate disregard of Plaintiffs' disability-related needs, their subsequent denial of Plaintiffs' reasonable modification

and/or accommodation request that they repair or replace the elevator, and their failure to engage in the interactive process – both independently and collectively – violate federal and New York State fair housing laws.

63.    Defendants' failure to provide and pay for the disability-related reasonable modification and/or accommodation requested by Plaintiffs violates Defendants' Section 504 obligations under their Regulatory Agreement with the NYSHFA. While Defendants failed to abide by this disability-related requirement of the Regulatory Agreement, upon information and belief, they do comply with all other non-disability-related provisions of the Regulatory Agreement. For example, Defendants comply with the requirement to rent all units at the Property to income eligible low-income households and set rents at affordable levels in accordance with the Regulatory Agreement.

64.    Accordingly, Defendants fail to comply with their Regulatory Agreement obligations only when they relate to the rights of people with disabilities. By selectively ignoring their disability-related obligations in the Regulatory Agreement, while abiding by other, non-disability-related obligations, Defendants provide housing to Plaintiffs and other individuals with disabilities on different terms and conditions than to non-disabled individuals, in violation of the federal Fair Housing Act, 42 U.S.C. § 3604, and the New York State Human Rights Law, N.Y. Exec. Law § 296.

65.    Moreover, Defendants' failure to upgrade or replace the elevator in Building A during their renovations of the Property, while carrying out other, non-disability-related renovations proposed in their application for LIHTC funding, constitutes disparate treatment of people with disabilities, in violation of the federal Fair Housing Act, 42 U.S.C. § 3604, and the New York State Human Rights Law, N.Y. Exec. Law § 296.

66.     Additionally, as recipients of federal financial assistance in the form of Project-Based

Section 8 Rental Assistance, Defendants have separately and independently violated Section 504

by failing to provide and pay for the disability-related modification and/or accommodation

requested by Plaintiffs.

**E.  The Need for Accessible, Affordable Housing in Potsdam, New York**

67.     There is a shortage of affordable rental housing in Potsdam. Approximately 59% of

Potsdam households rent their homes[2] and nearly two-thirds (64.5%) of such renter households

are moderately or severely housing cost-burdened,[3] meaning they spend 30% or more of

household income on rent and utilities.

68.     The proportion renter households headed by seniors aged 65 and older that are cost-

burdened is higher than the total proportion of cost-burdened renter households in Potsdam

(65.8% for senior renter households versus 64.5% for all renter households).[4]

69.     Potsdam's overall shortage of affordable housing is further exacerbated when people with

disabilities are unable to find accessible housing that meets their disability-related needs.

70.     Approximately 6% of Potsdam residents have some form of ambulatory disability.

However, this proportion is much larger for Potsdam's senior residents. Among Potsdam

residents aged 65 and older, 41% have some form of ambulatory disability.[5]

---

[2] U.S. Census Bureau, American Community Survey, 2021 5-Year Estimates ("ACS 2021 5-Year Estimates"), Table DPO4 for Potsdam village, New York, *available at* https://data.census.gov/table?q=dp04&g=1600000US3659564&tid=ACSDP5Y2021.DP04.
[3] ACS 2021 5-Year Estimates, Table B25072 for Potsdam village, New York, *available at* https://data.census.gov/table?q=B25072:+AGE+OF+HOUSEHOLDER+BY+GROSS+RENT+AS+A+PERCENTAGE+OF+HOUSEHOLD+INCOME+IN+THE+PAST+12+MONTHS&g=1600000US3659564&tid=ACSDT5Y2021.B25072.
[4] *Id.*
[5] ACS 2021 5-Year Estimates, Table S1810 for Potsdam village, New York, *available at* https://data.census.gov/table?q=disability&g=1600000US3659564&tid=ACSST5Y2021.S1810.

71.     Defendants' refusal to provide the disability-related reasonable modification and/or accommodation requested by Plaintiffs further constrains the already limited supply of housing available to low-income Potsdam residents with disabilities.

## CAUSES OF ACTION

### Count I:
### Violation of the Fair Housing Act of 1968, as amended, 42 US.C. § 3601, *et seq.*

72.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

73.     Defendants' acts of decommissioning the Building A elevator in deliberate disregard of Plaintiffs' disability-related needs, failing to pay for the disability-related reasonable modification and/or accommodation requested by Plaintiffs, and failing to engage in the interactive process with Plaintiffs – independently and taken together – have the purpose and effect of discriminating on the basis of disability.

74.     Defendants failed to fulfill their commitment to upgrade the Building A elevator during their renovation of the Property, while performing other non-disability-related renovations proposed in their application for LIHTC funding.

75.     Defendants disregarded their disability-related Regulatory Agreement obligations to provide and pay for reasonable modifications and/or accommodations, while continuing to abide by the non-disability-related requirements of the Regulatory Agreement.

76.     Defendants' selective completion of proposed renovations and selective compliance with the Regulatory Agreement has an adverse and disproportionate impact on people with disabilities, including Plaintiffs, as compared to similarly-situated non-disabled people.

77.     There is no legitimate, nondiscriminatory justification for Defendants' acts.

78.     Defendants' conduct, as described herein, violates the Fair Housing Act, as amended, 42

U.S.C. § 3604, in that Defendants discriminated against Plaintiffs in the terms, conditions, or

privileges of the rental of a dwelling, or in the provision of services of facilities in connection

with such dwelling because of disability, in violation of 42 U.S.C. § 3604(f)(2) and (3).

79.     As a result of the discrimination alleged in the previous paragraphs, Plaintiffs have

sustained the injuries described herein.

## Count II:
## Violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794

80.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs

above.

81.     Lawrence Avenue Apartments receives federal financial assistance in the form of Project-

Based Section 8 Rental Assistance from HUD.

82.     As owners or managers of Lawrence Avenue Apartments, Defendants are part of a

program or activity that receives federal financial assistance, and must comply with Section 504

at Lawrence Avenue Apartments.

83.     Defendants discriminated and continue to discriminate against Plaintiffs on the basis of

disability in violation of Section 504 of the Rehabilitation Act by refusing to pay for the

reasonable modification and/or accommodation requested by Plaintiffs.

84.     As a result of the discrimination alleged in the previous paragraphs, Plaintiffs have

sustained the injuries described herein.

## Count III:
## Violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

85.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs

above.

86.     Lawrence Avenue Apartments, which was acquired, rehabilitated, and operated by Defendants with the use of tax-exempt bond financing from the St. Lawrence County Industrial Development Agency, is a publicly-assisted housing accommodation, as defined by N.Y. Exec. Law § 292(11).

87.     Defendants' acts of decommissioning the Building A elevator in deliberate disregard of Plaintiffs' disability-related needs, failing to pay for the disability-related reasonable modification and/or accommodation requested by Plaintiffs, and failing to engage in the interactive process with Plaintiffs – independently and taken together – have the purpose and effect of discriminating on the basis of disability.

88.     Defendants failed to fulfill their commitment to upgrade the Building A elevator during their renovation of the Property, while performing other non-disability-related renovations proposed in their application for LIHTC funding.

89.     Defendants disregarded their disability-related Regulatory Agreement obligations to provide and pay for reasonable modifications and/or accommodations, while continuing to abide by the non-disability-related requirements of the Regulatory Agreement.

90.     Defendants' selective completion of proposed renovations and selective compliance with the Regulatory Agreement have an adverse and disproportionate impact on people with disabilities, including Plaintiffs, as compared to similarly situated non-disabled people.

91.     There is no legitimate, nondiscriminatory justification for Defendants' acts.

92.     Defendants' conduct, as described herein, violates the New York State Human Rights Law, N.Y. Exec. Law § 296, in that:

    a.     Defendants discriminated against Plaintiffs because of disability in the terms, conditions, or privileges of the rental or lease of a publicly-assisted housing

accommodation or in the furnishing of facilities or services in connection therewith, in violation of N.Y. Exec. Law § 296(2-a)(b).

b.   Defendants discriminated against Plaintiffs by refusing to make reasonable modifications to common use portions of a publicly-assisted housing accommodation when such modifications are necessary to afford Plaintiffs an equal opportunity to use and enjoy a dwelling, in violation of N.Y. Exec. Law § 296(2-a)(d)(2).

93.   As a result of the discrimination alleged in the previous paragraphs, Plaintiffs have sustained the injuries described herein.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment in its favor, and against Defendants, as follows:

94.   Declare that Defendants' discriminatory conduct, as alleged herein, is in violation of the federal Fair Housing Act, Section 504 of the Rehabilitation Act of 1973, and the New York State Human Rights Law;

95.   Enjoin Defendants and their directors, officers, agents, and employees from continuing to engage in the illegal conduct described herein and directing Defendants and their directors, officer, agents, and employees to take all affirmative steps necessary to remedy the effects of such conduct and to prevent additional instances of such conduct or similar conduct from occurring in the future;

96.   Award compensatory damages to Plaintiffs in an amount to be determined by the jury that would fully compensate Plaintiffs for the injuries caused by Defendants' unlawful conduct as alleged herein;

97.     Award punitive damages to Plaintiffs in an amount to be determined by the jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

98.     Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2) and N.Y. Exec. Law § 297(10); and

99.     Award Plaintiffs other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.


Dated: <u>April 17, 2023</u>                    Respectfully submitted,

**s/ M. Casey Weissman-Vermeulen**

M. Casey Weissman-Vermeulen (Bar #702110)
Conor J. Kirchner (Bar #518898)
CNY Fair Housing, Inc.
731 James Street, Suite 200
Syracuse, New York 13203
Phone: (315) 471-0420
Fax: (315) 471-0549
Email: cweissman-vermeulen@cnyfairhousing.org
Email: ckirchner@cnyfairhousing.org
*Attorneys for Plaintiffs*
